**SLOAN et al. v. LEGER MILL CO.**

No. 5405.

Court of Civil Appeals of Texas. Amarillo. March 23, 1942.

Rehearing Denied April 27, 1942.

Robinson & ·Oden, of Altus, Okl.; and Works· & Brian; ·of Amarillo, for appellants.

Strasburger, Price, ,Holland, Kelton & Miller, of Dallas, and Bradley & Wilson, of Lubbock, for appellee.

JACKSON,. Chief Justice.

The record shows that the Leger Mill Company is incorporated under and by virtue of the laws of the State of Oklahoma with its manufacturing plant at Altus, has a permit to do business in Texas and maintains a local agent and manager at Lubbock in Lubbock County, Texas. The Leger Mill Company, herein called the corporation, is engaged in the manufacture and distribution of various kinds of grain and the products thereof which it transports and delivers to customers who reside in Texas, Oklahoma and New Mexico with its own trucks which it operates under and by virtue of the authority issued to it by the State of Oklahoma. In the disposition of its products it maintains and operates several trucks which are driven by men employed for that purpose and among the truck drivers so employed was Clayton Sloan who, while in the course of his employment and engaged in driving a truck for the corporation, was injured when his truck was wrecked and as a result of such injuries he died.

On June 6, 1941, Evie Elizabeth Sloan, the wife of the deceased, for herself and as the duly and legally appointed guardian of Douglas Sloan and Helen Clay Sloan, the minor children of Evie Elizabeth Sloan and the deceased, instituted this suit in the District Court of Wilbarger County against the corporation to recover the sum of $45,000 exemplary damages on account of the gross negligence of the corporation, acting through its agent, Allan Jackman. The suit was transferred on a plea of privilege to Lubbock County, Texas, where the trial was had.

It is conceded by appellant that she collected compensation insurance from the corporation's insurance carrier for the death of her husband. This cause of action, therefore, is based exclusively on the alleged gross negligence of the corporation.

The appellant alleges that on July 9, 1938, the deceased reported at the plant at Altus for work and was sent out with a truck and trailer carrying approximately 20,000 pounds of the products of the corporation to be transported and delivered at some twenty different points in Oklahoma which necessitated driving the truck some 200 miles and unloading the produce; it was in bags, the heaviest of which each weighed about 100 pounds; that the deceased completed the trip and returned to Altus somewhere about 10 o'clock P. M. the same night; that soon thereafter he was advised by Allan Jackman that it was necessary to make an emergency trip in order to carry some repairs to a truck

driven by Denver Ross which had broken down near Munday, Texas, some 100 miles from Altus. Jackman directed the deceased to take the repairs on a truck and proceed immediately to the point near Munday where the broken down truck would be found; that the deceased undertook to make the trip notwithstanding he had been on duty approximately 18 hours, was tired, worn-out and exhausted, all of which was known to the said Jackman. In due time the deceased found the truck and. delivered the repairs and Ross and Clarence Talley, another driver, completed the repairs to the truck and the three drivers, each in his own truck, started on their return to Altus, Oklahoma and about 20 miles south of Vernon, on the next day, on account of his worn, tired and exhausted condition, deceased, was unable to control his truck which ran into a bridge on the highway, was wrecked and Clayton Sloan was burned to death; that the corporation had made no rules or regulations for the control of its business or the protection of its employees and the truck the deceased was driving was not in good repair; that such acts of the corporation in sending the deceased on the trip in his tired and exhausted condition in the heavy truck and without rules or regulations for his protection constituted gross negligence for which the appellant is entitled to recover individually and as guardian for the minors.

The corporation answered by special and general exceptions and general denial and pleaded that the deceased was guilty of contributory negligence and assumed risk.

It will be kept in mind that the appellant had been remunerated by the compensation insurance carrier for the death of deceased which was in lieu of all actual damages she and the children had sustained.

The court submitted the case to the jury on 35 special issues, many of which the jury failed to agree upon, and, on a motion non obstante veredicto made by the appellee urging that there was no testimony of gross negligence, the court granted the motion and rendered judgment notwithstanding the verdict that Evie Elizabeth Sloan, individually and as guardian for the two minors, Douglas and Helen Clay, take nothing and appellee go hence with its costs, from which action of the court this appeal is prosecuted.

The appellant assigns as error the action of the court in refusing to render judgment in her behalf on the finding of the jury to the effect that the appellee had failed to make rules and regulations for the conduct of its business and the control of its employees, which issue was pleaded and supported by sufficient testimony, together with the findings that such failure was gross negligence and the proximate cause of the death of the deceased.

The appellants cite us to no authority that holds that a failure to make rules and regulations for the protection of its employees constitutes gross negligence. The authorities hold that a failure to provide rules for the reasonable protection of the employees may constitute negligence and if such negligence is the proximate cause of any injury to an employee such negligence is actionable and a recovery may be had thereon for want of ordinary care, but none that we find hold that such negligence would constitute gross negligence upon which exemplary damages could be awarded. However, if there is such a rule it would not apply to the facts in this case.

The rule as stated in 35 Am.Jur. 584, par. 154, is as follows: "If the occupation or business is complex and dangerous the employer must safeguard his employees by the adoption of approved methods and the promulgation of rules and regulations; he may be held liable for any injury to an employee resulting from such failure to make proper rules and regulations for the conduct of the business, provided such injuries are the proximate results of such breach of duty. The reason for this is especially apparent where the business is such that the safety of employees depends upon the manner in which other employees do their work. The mere failure to adopt any particular rule is not, however, proof of negligence, unless it is to be concluded that the employer, in the exercise of reasonable care, should have foreseen and anticipated the necessity therefor. Furthermore, if the work is shown to have been simple in character and free from complications or complexities, it may be concluded that the employer was not under obligation to adopt any rules."

The rule is also stated in 39 C.J. 470, par. 586, in the following language: "Where a master is engaged in a complex or dangerous business, he must adopt and promulgate such rules and regulations for

the conduct of his business and the government of his servants in the discharge of their duties as will afford reasonable protection. * * * The mere failure to adopt rules is not proof of negligence unless it appears that the master in the exercise of reasonable care should have foreseen the necessity for such precautions. Thus no duty is imposed upon the master to adopt rules where the business is neither complex nor hazardous, where the dangers incident to the work are obvious, or of common knowledge and fully understood by the servant, where the practice actually in force renders a rule unnecessary, where the adoption of a rule is impracticable, or where rules could not have prevented the injury."

See, also, Crews v. Texas & P. Ry. Co., Tex.Civ.App., 149 S.W.2d 1079.

■ The operation of a few trucks is certainly not a complex or dangerous business that would require regulations or rules for the safety of the drivers who were experienced as the deceased was revealed to be by this record. The rules necessary for safety, including the hours a driver is permitted to drive a truck are regulated by law.

This contention of appellant is not tenable.

■ The jury failed to answer the issue submitted as to whether Allan Jackman in directing or requiring Clayton Sloan to make the trip to Munday, Texas, if he did so direct or require, was gross negligence. They also failed to agree on some of the other special issues but this is sufficient to show that appellant was not entitled to recover damages for gross negligence of the corporation. The testimony shows that on Saturday night, July 9th, Clayton Sloan reached Altus some time before 9:30 P. M.; that he went to a barber shop and while there was approached by his brother-in-law, James Higgs, whom he agreed to help move to Altus the following Sunday; that after the deceased had received a haircut and returned home he found a call from his brother-in-law asking that he return to the front of the city hall and help the brother-in-law fix a flat tire on his car. Mr. Higgs testified that he found Sloan Saturday evening in the barber shop where he was getting a haircut and that Sloan nodded while in the chair and he could hardly keep awake but he was not too sleepy or tired to help him change the tire on his car; that while he and the deceased were changing the tire Allan Jackman drove up and told Sloan he would have to go to Munday, Texas because there was a truck broken down at or near Munday. On further interrogation by appellants' attorney this witness testified as follows:

"Q. What else did he say? A. Clayton asked him, he said 'Why don't you get someone else, there are some of the boys that have not had a run this week' and he said 'I have just finished a run from Sweetwater and I am tired and give out now.'

"Q. What did Allan say? A. Allan said 'I have tried to contact one of the boys but you are the only one I can find and you will have to go.'

"Q. What else was said? A. That is about all of the conversation. Clayton asked him then 'what about me taking the pick-up or the half-ton truck' and Allan says 'It doesn't have a Texas tag on it and you will have to go on the ton and a half International or two-ton truck with a Texas tag.'

"Q. Did he say there boys were at Munday? A. He said they were in and around Munday.

"Q. What else was said? A. That is about all of the conversation."

F. F. Jackman, secretary and treasurer of the corporation, testified that on July 9, 1938 Sloan left at 3:10 A. M. and returned to the plant at 8:40 P. M.; that Sloan worked 18½ hours that day but actually drove his truck only 8 hours and 40 minutes. Allan Jackman testified that he instructed the deceased to get him a room and rest after he delivered the repairs before coming back. Mr. Talley, one of the truck drivers, testified that he was delivering a load to Stamford, Texas and ran into Denver Ross, another truck driver of the corporation, north of Stamford and that Ross' truck was in trouble; that witness transferred Ross' load to his truck and went ahead and delivered it and came back; that he and Ross went into Munday to call Allan Jackman to send some new parts about seven or eight o'clock Saturday night; that Sloan came to them in a ton and half truck about 5:30 Sunday morning bringing complete parts; that witness then repaired the truck, finishing about 6:30 that morning; that he, Ross and Sloan

went into Munday where the three had breakfast together, each driving his truck; that after they left Munday they continued on until they reached Seymour where they stopped and drank a coca cola about 8:30 A. M.; that Mr. Sloan while sitting on a chair in front of the station said he was sleepy and thought he would get a room and sleep a while before going on home; he said "I believe I will go get a room and sleep a while; that witness told the deceased Ross had some money belonging to the company and if he wanted to rent a room and sleep a while he could come on when he got ready and deceased asked "What are you boys going to do" and was told they needed the truck that had broken down in Altus so it could be checked over and ready to go out Monday morning and they were going on but advised him to do what he wanted to about getting a room and sleeping and deceased said it had been so long since he had spent any time with his wife and babies he thought he would just come on in. They left Seymour and had traveled about 25 miles north when Sloan's truck was wrecked and he was carried to a hospital at Vernon. Denver Ross, the other truck driver, testified to the facts substantially as did the witness Talley; that they came to Munday and ate breakfast; that there was something said by Sloan about getting a room and going to bed; that he didn't remember whether Sloan said Allan Jackman told him to get a room and sleep or not but Sloan decided he would come on home; that they all three left Munday, stopped at Seymour and got a coca cola and then started again. Mr. Allan Jackman testified that he received the call on Saturday night at his home after he had left the plant and he was advised that Ross' truck had broken a rear hub and he could not get in without he was sent repairs; that he started to look for somebody; that he had three other truck drivers, Jess Gilbert, Dennis McKinney and Arch Pike, but he couldn't find any of them but while in search of them he found Mr. Sloan and as a result of their conversation Sloan agreed to make the trip and he told the deceased if he went down there when he delivered the repairs to go to sleep and he promised that he would; that while they had no written rules there was a bulletin posted from the insurance company and all of the men had been told to stop and rest and if too far away to stay away all night and the corporation paid the expenses for such lodging and that the men did that from time to time.

In Missouri P. Ry. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, 411, gross negligence is defined as follows: "Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it."

In International & G. N. Ry. Co. v. Cocke, 64 Tex. 151, is this definition: "Negligence cannot be considered 'gross' unless evidenced by an entire failure to exercise care, or by the exercise of so slight a degree of care as to justify the belief that the person on whom care was incumbent was indifferent to the interest and welfare of others."

See, also, Mayer v. Johnson et al., Tex. Civ.App., 148 S.W.2d 454, and authorities therein cited for definition of gross negligence.

In 39 C.J. 766, par. 965, the law as stated by the author on the question of an employee overtaxing his strength or powers is stated thus: "A servant assumes the risk of physical injury to himself sustained by reason of his overtaxing his strength or powers of endurance in doing the work for which he is employed, when the occasion presents no emergency requiring hasty action."

In Gulf, C. & S. F. R. Co. v. Spivey, 56 S.W.2d 655, the rule announced in the text is approved by the Court of Civil Appeals at Austin in an opinion by Judge Baugh who says in the absence of an emergency an employee who is injured by overtaxing his strength assumes the risk thereof because he is the best judge of his own strength.

In our opinion the testimony fails entirely to show that the corporation was guilty of gross negligence and that the court correctly granted the motion non obstante veredicto and rendered judgment for the corporation.

The testimony of Dr. S. C. Arnett, Jr., excluded by the court, of which appellant complains, in our opinion does not present reversible error but had it been admitted the evidence would not have presented a jury issue.

The judgment is affirmed.