W. E. GRACE MFG. CO., Appellant,

v.

George Washington ARP, Appellee.

No. 15364.

Court of Civil Appeals of Texas.

Dallas.

Feb. 14, 1958.

Rehearing Denied March 14, 1958.

Charles H. Slaughter and Louis Wilson, Dallas, for appellant.

Akin & Vial, Henry D. Akin, Jr., Dallas, for appellee.

CRAMER, Justice.

■ "George Washington Arp filed this suit in the 101st Judicial District Court, Dallas County, Texas, seeking a recovery of damages for personal injuries sustained by him while in the employ of appellant W. E. Grace Manufacturing Company, on or about April 25, 1956. The case was tried under a stipulation that W. E. Grace Manufacturing Company was at the time of the injury to plaintiff engaged in a business not excluded from the provisions of the Workmen's Compensation Act of the State of Texas; that the Company had in its employ on the date of the injury more than three employees; and that the Company did not have in force and effect on the date of the injury a policy of Workmen's compensation insurance covering its employees and in particular covering George Washington Arp." The case was submitted to the jury on special issues to which the jury found (1) on the occasion in question the Company, its agents, servants and employees failed to instruct Arp in the use of a Baker vertical boring machine prior to the accident; (1-A) such failure was negligence; (1-B) was a proximate cause of the accident in question; (2) the Company, its agents, etc. failed to furnish Arp with suitable tools with which to remove the steel shavings from under the drill on the boring machine; (2-A) which was negligence; (2-B) and a proximate cause of the accident; (3) the Company did not fail to equip such machine with safety de-

vices to stop the downward movement of the drill after it completed boring the bushing; (4) the Company failed to equip the boring machine with safety shields to protect Arp's hands from the drill, but (4-A) such failure was not negligence; (5) the Company failed to inspect the boring machine for mechanical defects; which was (5-A) negligence and (5-B) proximate cause of the accident; (6) Arp's placing his fingers in the machine (6-A) was negligence but (6-B) not the sole proximate cause of his injuries; (7) Arp was damaged by the accident in the amount of $5,035.

On the verdict the trial court entered judgment for $5,035 plus interest, costs, etc., and the manufacturing company has duly perfected this appeal.

The points are briefed in groups and we will so consider them.

Points 1–6 and 28 are briefed together and assert error because (1) as a matter of law there was no evidence to show a duty on the Company to instruct Arp in the use of the boring machine and the trial court therefore erred in submitting special issue No. 1; (2) in submitting issue 1-A because such failure was not "a responsible care or producing cause chargeable to it in the physical order or sequence of events leading up to the injury"; (3) Arp was familiar with the use and operation of the punch press and drill press as shown by his statement in his application for employment and the Company was not advised to the contrary; therefore there was no liability on the part of the Company; (4) there was no evidence of Arp's inexperience and he being an adult the Company could assume by his acceptance of such employment that he was acquainted with the ordinary risks incident thereto, and no special instructions were necessary to operate the machine; (5) the answer to issue 1-A being of a collateral and secondary nature, it did not show an active or procuring cause in the line of causation of which the event complained of was a natural and probable sequence; (6) that the Company failed to

instruct Arp in the use of the machine prior to the accident was not supported by the findings of the jury in answer to special issue No. 1-B; nor was the same a substantial factor in bringing about the resulting injuries complained of and the court therefore erred in returning judgment based thereon; (28) there was no evidence to support the finding to issue 1, and issue 1 was immaterial after the jury's answer to issue 3.

Appellee counters that (1) the trial court correctly submitted issues 1, 1-A and 1-B since they were raised by both pleadings and evidence; (2) issues 1, 1-A and 1-B were supported by the evidence; (3) the trial court without considering other issues of negligence could have correctly entered judgment for appellee Arp based on answers to issues 1, 1-A and 1-B and the damage issue. These points require an examination of the evidence to ascertain if there is any evidence to support the issues involved. Arp's application shows his age to be 32 years; his last employment in 1954–1956 was as a carpenter and before that he was self-employed for some ten years; that he is best on the punch press, drill press, and metal shear; that his physical defects are "no vision in left eye"; his duties when working for Continental Gin Company were to bring materials to the man who operated the shear. He further testified that he had not attended a trade school and his previous work was mostly construction on residence houses, using carpenter's tools; that he was not to work on a boring machine; that he told his foreman he did not understand its operation and the foreman then went through the process of setting up and drilling out one bushing while he (Arp) watched him; that was all the instruction he received. He stated that he had no knowledge of any depth stop on the machine and he was given no instruction on how to use it. He was injured about 9:00 A.M. when the cutting tool struck his finger while he was attempting to keep a shaving from being picked up by the cutting tool and working back up

the drill into a bushing that was being bored out, which would have caused the tool to lock to the bushing and would have allowed the bushing to turn within the jaws of the die; that in the short time he had been working on the machine he had to do this many times to remove long shavings that were beginning to follow the drill; that he was not given any instructions at all on what to do when the shavings started to work back up the drill and go into the bushing; he had not encountered this on the drilling machine because in drilling the shavings came out the top, but in boring the shavings came out below the tool.

George Alton Smith, of Arlington State College, an expert called in behalf of plaintiff, testified that a man starting to work at a Baker upright boring machine should be instructed as to the precautions to be taken in keeping the locating surfaces, which would be your jaws, or your clamps, clear of shavings so the bushing would be located properly. Mr. Jim Crawley testified that it was his duty to train the men in the operation of the machines, but that he did not know how much experience the plaintiff had had and he did not check to find out. He further testified that he did not instruct the plaintiff as to the use of the depth stop. Mr. Grace himself testified that he knew that the plaintiff's machine shop experience was limited and that it was Crawley's job to instruct him.

The assistant to the owner of the shop, a witness for the Company, on cross-examination testified it would take an hour to instruct a man in the use of such a machine, but if he was mechanically inclined and intelligent he could be given general instructions in ten minutes; that not telling a man how to set the stop would give some sort of peril to the operator.

Ordinarily there is no duty on the part of an employer to instruct an employee who is experienced in the line of work to which he is assigned, or in the use of a machine with which he is familiar. But in the case of an employee who is known by the employer to be inexperienced in the type of work to which he is assigned, or in the use of a dangerous machine, there is a duty on the part of the employer to instruct the employee. 29 Tex.Jur. 233. In this case the employer himself testified that he knew the employee was of a limited machine shop experience. We think the testimony here supported the submission of the issues and the answers of the jury. Points 1 to 6 and 28 are overruled.

Points 7 and 8 assert issue 2 is on the weight of the evidence and the jury's answer to issue 2 conflicts with their answers to issues 3, 4-A and 6. Issue 2 was: "Do you find from a preponderance of the evidence that at the time, place and occasion in question defendant, and its agents, servants, and employees failed to furnish plaintiff with suitable tools with which to remove the steel shavings from under the drill of the Baker Vertical Boring Machine in question?"

We see no conflict between the finding that the Company did fail to furnish suitable tools to remove steel shavings from under the drill and the finding that the Company did not fail to equip the boring machine with safety devices to stop the downward movement of the drill after it completed the bushing as asserted in point 8. The Company did furnish a steel brush with a handle to brush the steel shavings from under the drill and under such record in our opinion the evidence raised issues here complained of and submitted to the jury. Points 7 and 8 are overruled.

Points 9 and 10 assert a conflict in the findings (9) in issue 2 and issues 3, 4-A and 6, or between issues 2 and 3. In issue 2 the jury found negligence in failing to furnish suitable tools to remove the shavings. Issues 3, 4-A and 6 found that there was no failure to equip the machine with safety devices to stop the downward movement of the drill after boring the bushing. Issue 4-A found no negligence in the Company's failure to equip the boring machine with safety shields to protect Arp's hands. The finding to issue 4-A involved only

shields around the drills to keep the operator's hands from contacting the drill from the sides, while the finding to issue 3 involved only the hand or fingers under the object through which the hole was being drilled. Points 9 and 10 are overruled.

Point 11 asserts: "Appellee having control of said machine so that he could stop it in any of three ways known to him, that is, by the use of the feed and stop, by the use of the bottom by which the drill would start to revolve, and to stop the drill, his failure to use either of said means, was the natural and probable consequence of such negligence. The trial court, therefore, erred in failing to so find." Countered that: "The jury found that the negligence of plaintiff in placing his fingers in the Baker Vertical Boring Machine was not the sole proximate cause of the injury sustained by plaintiff, and therefore the negligence of plaintiff is not determinative of any issue in this case."

■ In the case here the employer was not a subscriber under the Workmen's Compensation Act. Therefore contributory negligence and other defenses here involved are immaterial and do not bar a recovery by the employee if the employer is found negligent in matters proximately causing the injury. Art. 8306, sec. 1, Vernon's Ann.Texas Civil Statutes; Najera v. Great A. & P. Tea Co., 146 Tex. 367, 207 S.W.2d 365.

The jury also found that the negligence of the employee in placing his fingers in the boring machine was not the sole proximate cause of the injury and disability to Arp. Point 11 is overruled.

■ Points 12, 13 and 14 assert a conflict in the jury's findings in issues 2, 2-A and 3 and in issues 2-A, 3 and 4-A to such an extent that they destroy each other. These issues are summarized above. In our opinion the failure to furnish suitable tools to remove the steel shavings from under the chute, and no failure to equip the machine Arp was working on with safety devices to stop the downward movement of the drill after it completed boring the bushing, and the answers are therefore not conflicting. Points 12, 13 and 14 are amended.

Points 15, 16 and 17 assert error in the operation of the machine at the time of the accident, the inherent risks, as well as the dangers attendant upon it were open and obvious and therefore were each assumed by Arp. (16) In that where the manufacturing company was not eligible to the benefits of the Workmen's Compensation Act, the burden was on appellee to prove the alleged negligence of the employer and his failure to so prove the alleged negligence relieved the Company of liability and it was therefore error to refuse its requested instruction 6. (17) Appellant was entitled to an affirmative presentation to the jury of any fact or group of facts pled and proved by it which would support its defense. Therefore erred in refusing requested issues 5 and 6 which asked the jury in substance (5) whether or not Arp assumed the risks and hazards attendant upon the operation of the drill, in the manner in which he operated the same at the time; and (6) whether or not Arp knew and appreciated the dangers and hazards, if any, in the operation of such machine or in the exercise of ordinary care should have known and appreciated same.

■ The Company was, under the evidence, (1) within the terms of the Workmen's Compensation Act; therefore under Art. 8306, secs. 1 and 4 deprived of its defenses such as contributory negligence, negligence of a fellow employee or servant and assumed risk. Sears-Roebuck & Co. v. Robinson, 154 Tex. 336, 280 S.W.2d 238; Railway Express Agency v. Bollier, Tex.Civ.App., 253 S.W.2d 669, error ref., and Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847. Points 15, 16 and 17 are overruled.

■ Points 18 through 21 and 26 assert, in substance: (18) error in giving issue 5

over objections that (a) it was improper, misleading, prejudicial, and in effect a charge upon the weight of the evidence, (b) allowed the jury to speculate and gave them the impression the court thinks "defendant actually failed to properly instruct plaintiff in the use of the" machine in question, (c) it emphasized the theory of Arp and left the jury to speculate that the Company did fail to do so, (d) there is no evidence to support issue 5.

■ These points are countered that issue 5 has sufficient support in the evidence. Special issue No. 5 in full was as follows: "Do you find from a preponderance of the evidence that at the time, place and occasion in question, and prior thereto, defendant, and its agents, servants, and employees failed to inspect the Baker Vertical Boring Machine for mechanical defects." The jury answered, "They failed to."

The material evidence here was, in substance, as follows: Jim Crawley, on cross-examination, testified as to his duties that he looked after the machines, inspected the machines particularly as to their safety for the operator; that was his sole duty—to find the trouble and if it could be fixed he did so. However if too difficult, he reported it to Mr. Grace who would get it fixed. The duty of inspection was his. He was to find out what was wrong with the machines; he had had but little experience in the machine shop until about seven years prior thereto; had spent about a year in the machine shop. He did about all the repairing of equipment such as the Baker upright boring machine; that in repairing sizeable machines he had had no schooling on the Baker drill; that what he knew about the particular press involved here he picked up; that he checked it all over as he did every time he changed jobs to see if it was working right; that his inspection and the supervision he gave the machine are to keep it in repair, he had picked up, but he checked it over each time he changed jobs to see if it was working right. His system of inspection was to give the machine inspections and oilings at about 30 or 45 day intervals. A colored boy was in charge of it. There are laborers who wipe the machine and give some of the lubrications. There was also evidence from Professor Smith that a drop of one-half inch after the boring of a bushing had been completed would be far too much wear for normal conditions; he couldn't imagine a machine being operated with that much wear in the mechanism; that it indicated considerable slack in the movement of the mechanism; further that the machine should be inspected for good operating condition every four to six weeks and the wear and tear inspection made every three months. Mr. Grace testified in substance, material here, that the inspections were probably made at 30 to 45-day intervals and that they were oiled daily.

Such evidence, and that referred to under points 1 to 6 and 28, which is made a part of the statement under this point, was sufficient to support the submission of issue 5 and the jury's findings on the issues on employer's nondelegable duties (1) to maintain the premises and appliances by inspection to discover defects and to take necessary precautions to repair or discontinue the use if they cannot be repaired. 29 Tex.Jur. 177–191, 193, 197. There was testimony such inspections were made every 30 or 45 days and evidence that in regard to wear and tear an inspection was made every three months which should be sufficient. The evidence raises questions of fact and the jury settled such questions in their verdict favorable to the Company against Arp.

We are also of the opinion and hold that the issue was not misleading, but submitted the question of inspection properly to the jury, confined the jury to the evidence, and did not lead them to believe the court had an opinion on such question; did not emphasize Arp's theory of the case, nor authorize them to speculate as to the Company's failure in any respect. Points 18 to 21 and 26 are overruled.

Points 22–25 inclusive assert error (22) in refusing appellant's peremptory instructions since there was no evidence to show that a person of ordinary care and prudence would anticipate the injury here involved, or some similar injury; (23) Arp's testimony and the jury finding to issue 6 "produce a new and independent cause in the chain of events which could not have been reasonably foreseen by the appellant in the exercise of ordinary care." (24) "According to the undisputed testimony, the act or omission of appellant was interrupted and superseded by the appellee's act of placing his fingers in the jaws of the chuck and the drill at the time in question, and foreseeableness did not accompany the same as the natural and probable result thereof. The court, therefore, erred in refusing said requested peremptory instruction."

These points are countered that under the doctrine applicable to this type of action where employer was eligible but not a subscriber under Workmen's Compensation Act at the time of the injury, the peremptory instruction was properly overruled.

The above defenses are barred by the Workmen's Compensation Act. Railway Express Agency v. Bollier, Tex.Civ.App., 253 S.W.2d 669, error ref.; Art. 8306, sec. 1, Vernon's Texas Civil Statutes. Points 22–25 are overruled.

Point 27 is not briefed.

Point 29 asserts that the amount of damages, $5,035, found by the jury is "out of proportion to the extent of the injuries sustained by appellee * * *," and "was the result of bias and prejudice or an improper conception of the measure of damages" and should be set aside. This point is countered that the finding of the jury of damages in the sum of $5,035 is supported by the evidence. The evidence on this point and counterpoint was, in substance, Arp testified (in April 1956) he was 33 years of age, married, has one child; that after he left school he farmed for a while; then moved back to Dallas; worked for Holister Coil Spring Company on a winding machine; he lost the sight of one eye when a child while playing with a pocket knife; that his injury here was to his second index finger on his left hand; since the injury has worked for himself; after the accident he was taken to a clinic where they gave him a couple of shots and the Doctor cut the bone back in order to have flesh to cap the end of his finger; he went back to work some 39 days after the accident; and thereafter the jar he would receive through working "would set up a pain that would follow up my arm into my shoulders, into my chest that was continuous in the day"; that he had the pain for two months after the accident. After the first two months his discomfort was merely in his finger, hand and wrist; the pain depending on what he was doing; there was a constant pain that recurs with change of position when he needed to use more grip in the hand and when he used individual fingers; that his hand is free of pain unless he takes hold of something; that he cannot make a fist; that it is touchy; cannot pick up a coin with it and when he has to use his fingers, his production is decreased 50% at times; that when he does very delicate work requiring feeling through the tip ends of his fingers, such as handling small nails in a very close position, his finger is more or less in the way and slows him down 50%; that his salary before the accident was about $2,700 per year, but in the year following the accident was only about $1,600.00.

In considering the question of excessiveness of the verdict we have reached the conclusion, from the record as a whole, that the jury made an honest and impartial finding from the evidence, not influenced by passion or prejudice, and that the amount of the damages found by the jury was not excessive. Point 29 is overruled.

Finding no reversible error in the trial court's judgment, it is

Affirmed.