**I.M. WERNER, et al., Appellants,**

v.

**Dixie A. COLWELL, Appellee.**

No. 10–92–040–CV.

Court of Appeals of Texas, Waco.

May 12, 1993.

Rehearing Denied Aug. 11, 1993.

Warren W. Harris, John L. Dagley, Porter & Clements, L.L.P., Houston, for appellants.

Michael Thomas, Michael Thomas, P.C., Amy Thomas, The Law Office of Amy Thomas, Mexia, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

I.M. Werner, Karlo Werner, and Eastex Meat Processing, Inc., defendants, appeal a judgment in favor of Dixie and Victor Colwell. The court rendered judgment for $298,000 in favor of Dixie against Karlo, individually, and Eastex. The court also rendered judgment against I.M. Werner in her representative capacity as Trustee for the Eastex Employee Benefit Trust for benefits under the trust benefit plan totalling $250,000. I.M. contends that she was not a party to the suit in her representative capacity as Trustee, that damages rendered against her were not supported by the verdict, and that the judgment against her gives Dixie a double recovery. Karlo and Eastex argue that there was no evidence or, in the alternative, insufficient evidence to support the jury's finding that they were negligent.

Dixie was employed by Eastex Meat Processing, a nonsubscriber of workers' compensation. Eastex and the Werners, the sole shareholders of Eastex, obtained a "benefit plan" through Gulf States Underwriters, Inc. of Louisiana to provide benefits for Eastex's injured employees. They created the trust to administer the benefit plan.

On October 8, 1988, Karlo Werner became intoxicated before lunch and his wife, I.M., took him home. After Karlo left, Eastex had no other male employees to do heavy lifting. Dixie injured her back while loading a bag of meat onto a customer's pickup truck.

Dixie and her husband, Victor, sued the Werners and Eastex alleging that the company was a nonsubscriber to workers' com-

pensation benefits. They sought damages based on negligence. The jury found that the negligence of Karlo Werner and Eastex proximately caused Dixie's injuries and awarded her $298,000 in damages against them. It also found that Dixie was injured while engaged in her employment and was totally disabled as defined in the benefit plan. The court entered judgment against Karlo and Eastex for $298,000 based on the jury's verdict. It also entered judgment against I.M., as Trustee for Eastex Meat Processing, Inc. Employee Benefit Trust, for past benefits and future medical and weekly benefits under the plan until the amount of Dixie's benefits total $250,000—the maximum payable under the plan.

## PARTIES

In their first point, the Werners and Eastex contend that the trial court erred in rendering judgment against I.M. Werner, Trustee, because she was not a party to the lawsuit in her representative capacity. They claim that Dixie only sued I.M. in her individual capacity.

■■■ The purpose of a pleading is to give fair and adequate notice to the adverse party of the facts relied on by the pleader so that he may properly prepare a defense. *Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 636 (Tex.1982). Fair notice has been given if the pleadings are sufficiently specific so that an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the probable relevant testimony. *Bader v. Cox,* 701 S.W.2d 677, 686 (Tex.App.— Dallas 1985, writ ref'd n.r.e.).

Dixie's pleading states in part:

This suit is brought to recover benefits due Plaintiff, Dixie Colwell, because of disability resulting from injuries which she suffered while working in the course and scope of her employment for the Defendants.... At the time of said injuries, Defendants, WERNERS and EASTEX, apparently had attempted to provide workers' compensation insurance upon its employees through ... GULF STATES UNDERWRITERS OF LOUISIANA, INC....

■■■ Regardless of whether the pleadings gave the Werners and Eastex fair notice of the complaint against I.M. as Trustee, her liability in a representative capacity was tried by implied consent. *See* TEX.R.CIV.P. 67. Generally, parties seeking affirmative relief are restricted in their recovery to claims asserted in the pleadings; however, an issue may be deemed tried by consent when evidence upon such issue is developed under circumstances that the parties understand the issue is in the case and the other party fails to make an appropriate complaint. *Realtex Corp. v. Tyler,* 627 S.W.2d 441, 443 (Tex.App.—Houston [1st Dist.] 1981, no writ). I.M.'s attorney objected and argued that she was not sued in her representative capacity; however, he never got a ruling on the objection, and I.M. has thus waived any complaint in this regard.

I.M. voluntarily testified at trial in her capacity as Trustee. She admitted that her testimony about the claim procedures under the benefit plan involved herself in her representative capacity. Furthermore, she admitted that if the jury found that Dixie was hurt on the job then I.M., "as trustee, would believe that she would be entitled to all these benefits under the plan." We overrule point one.

## THE INSURANCE CONTRACT

■■ In their second point the Werners and Eastex contend the damages awarded against I.M. were not supported by the verdict. To determine this issue, we must first construe the relevant portions of the insurance contract. The cardinal rule to be observed in contract construction is to ascertain and give effect, whenever possible, to the real intention of the parties as revealed by the language used in the agreement. *R & P Enterprises v. LaGuarta, Gavrel & Kirk,* 596 S.W.2d 517, 518 (Tex. 1980). Their intent must be determined primarily from the body of the instrument itself. *Id.* at 519.

The insurance contract establishing the benefit plan contained these pertinent provisions:

### SELF–INSURED EMPLOYEE BENEFIT PLAN

WHEREAS, EASTEX MEAT PROCESSING, INC. [Employer] ... desires to provide its employees certain medical and death benefits arising out of accidental bodily injuries sustained solely through external, violent and accidental means which occur while the employees are actually engaged in the duties of their employment with the Employer;

. . . . .

NOW, THEREFORE, the Employer hereby adopts the following Employee Benefit Plan [the Plan].

. . . . .

### BENEFIT SCHEDULE

PRINCIPAL SUM: $15,000.00 PAYABLE IN WEEKLY INSTALLMENTS AS STATED BELOW

WEEKLY ACCIDENT BENEFITS: $ See endorsement

With elimination period of 8 days, but not to exceed 79 weeks retroactively. [The Endorsement provides that "TOTAL DISABILITY Benefits payable per week shall not exceed 66⅔% of the Employee's average weekly wage or $190.00 whichever is less. The maximum benefit payable shall not exceed the PRINCIPAL SUM [i.e., $15,000] shown in the TRUST SCHEDULE."]

HOSPITAL AND MEDICAL CARE EXPENSE:

Maximum Daily Rate: $ Usual & Customary Charge

Not to Exceed: $5,000.00

Part 1 WEEKLY ACCIDENT BENEFITS

A. TOTAL DISABILITY: If Such Injuries shall, after the elimination period, as shown in the Benefit Schedule, from the date of the accident continue to continuously disable the injured [person] and prevent him from performing every duty pertaining to his business or occupation ... the Employer will pay ... at the rate of Benefits shown in the Benefit Schedule for the continuous period of total disability ... but not exceeding the maximum shown in the Benefit Schedule [i.e., $15,000].

. . . . .

Benefits as provided under this Part 1 shall be paid in addition to any benefits which are paid under ... Part 3 [Hospital and Medical Care]....

. . . . .

Part 3 HOSPITAL AND MEDICAL CARE

Should the injured [person] ... require medical attention and/or services as herein-below set forth, the Employer will pay, in addition to the benefits provided under Part 1 ... hereof, for the following expenses but not exceeding the maximum specified in the Benefit Schedule:

(a) Hospital Services: The usual and customary charge made by the hospital for room and board....

(b) Medical Services: The usual and customary charge made by a licensed physician or surgeon for the necessary treatment of Such Injuries.

(c) Drugs and Medicines: The usual and customary charges for drugs and medicines specifically prescribed by the attending physician and necessary in the treatment of Such Injuries.

Benefits as provided under this Part 3 will be paid in addition to any benefits which are paid under Part 1....

The language of these provisions, including the endorsement, show the parties to the insurance contract intended that: (1) the payment of weekly accident benefits for total disability would be limited to seventy-nine weeks, after eliminating the eight-day period following the injury, not to exceed $15,000; (2) the amount of the weekly accident benefit would be 66⅔ of the injured employee's average weekly wage or $190, whichever is less; (3) hospital and medical care expenses would be limited to $5,000; and (4) weekly accident

benefits would be payable in addition to expenses for hospital and medical care.

The insurance contract, in addition to the basic plan outlined above, also contained the following supplement:

ADDITIONAL BENEFIT SUPPLEMENT PROVIDING BENEFITS IN ADDITION TO THE BASE PLAN IN THE ADDITIONAL AGGREGATE AMOUNT OF: $235,000.00

THIS ADDITIONAL BENEFIT SUPPLEMENT ... IS SUBJECT TO ALL PROVISIONS OF THE PLAN WHICH ARE NOT IN CONFLICT WITH THE PROVISIONS OF THIS SUPPLEMENT. THIS SUPPLEMENT PROVIDES THE ADDITIONAL BENEFIT COVERAGE TO THE EMPLOYEES COVERED UNDER THE PLAN TO WHICH THE SUPPLEMENT IS ATTACHED:

. . . . .

THE PLAN WILL PAY benefits to injured employees resulting from such injuries which are in addition to those provided in the Plan. The additional amount is not to exceed the Additional Aggregate Amount shown above [i.e., $235,000] and in the Benefits Schedule, Page Number One of the Plan.

(1.) total disability relating to any one person for any one occurrence;

. . . . .

(3.) medical expenses relating to any one person for any one occurrence.

IT IS MUTUALLY AGREED AND UNDERSTOOD THAT ANY BENEFIT PAYABLE UNDER PARTS "(1)" AND "(2)", ABOVE WILL BE PAID IN A WEEKLY AMOUNT EQUAL TO THE WEEKLY RATE STATED IN THE ATTACHED [ENDORSEMENT] DIVIDED INTO THE "ADDITIONAL AGGREGATE AMOUNT" (shown above) LESS ANY MEDICAL EXPENSE BENEFIT PAID UNDER ITEM "(3)" ABOVE.

The language of the basic plan, the endorsement, and the supplement shows the parties to the insurance contract intended that: (1) the weekly accident benefit of a totally disabled employee would continue beyond seventy-nine weeks as long as the employee remained totally disabled; and (2) the total accident benefits paid to a totally disabled employee could not exceed $250,-000, less any medical expense paid to the injured employee under either the basic plan or supplement.

■ Thus, to establish her right to recover basic and supplemental benefits under the plan for total disability, Dixie had to prove and, if necessary, obtain findings on four elements: (1) job-related injury, (2) average weekly wage, (3) total disability, and (4) length of total disability. With these four elements, the court could calculate basic and supplemental benefits as a matter of law. Dixie obtained favorable jury findings of a job-related injury and total disability. Also, I.M. Werner admitted during testimony that 66⅔ of Dixie's average weekly wage would be $120. However, Dixie never asked the court to submit a question to establish the length of her total disability, and there was no objection to its omission from the charge. The court, however, rendered judgment that Dixie recover from I.M. Werner, Trustee of the benefit plan, past and future weekly disability benefits and past and future medical and hospital expenses "until the amount of benefits paid, plus hospital and medical care expenses, total $250,000.00— the maximum payable under the Self–Insured Employee Benefit Plan." This calculation in the judgment obviously depends upon her total disability being permanent.

■ The evidence is sufficient to support a finding that Dixie's total disability is permanent. Accordingly, we must deem that finding in support of the judgment. *See* TEX.R.CIV.P. 279. We overrule point two because the verdict supports the judgment awarding Dixie the recovery under the employee benefit plan.

## NEGLIGENCE

In points four through seven, Karlo and Eastex argue that there is no evidence or, in the alternative, insufficient evidence to

support the jury's finding that they were negligent.

Karlo and Eastex contend that they owed no duty to Dixie and that "it appears that the liability of Karlo Werner, individually, was predicated on an alter ego or piercing the corporate veil theory" because Karlo was a shareholder of Eastex. This argument is incorrect. When the employer is not a subscriber under the Workers' Compensation Act at the time of the injury, the employee is not entitled to compensation benefits. However, the employee may bring suit and recover a judgment against the employer for all damages sustained from any personal injury received in the course of employment. *W.E. Grace Mfg. Co. v. Arp*, 311 S.W.2d 278, 282 (Tex. Civ.App.—Dallas, writ ref'd n.r.e.). Under these circumstances, the common-law defenses of contributory negligence, assumption of the risk, and fellow-servant negligence are not available to the employer. *Harrison v. Harrison*, 597 S.W.2d 477, 481 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.). In an action for personal injuries, the employee must allege and prove negligence on the part of the employer that proximately caused the injuries. *Potter v. Garner*, 407 S.W.2d 537, 541 (Tex.Civ. App.—Tyler 1966, writ ref'd n.r.e.). In such an action, the only defenses available to the employer are to show that it was not guilty of negligence proximately causing the injury or conversely that the employee was guilty of some act that was the sole proximate cause of the injuries. *Texas Farm Products Co. v. Stock*, 657 S.W.2d 494, 502 (Tex.App.—Tyler 1983, writ ref'd n.r.e.).

An employer is under a duty to provide his employees with a reasonably safe place to work and to furnish the necessary appliances for carrying on the work requested of the employees in a proper condition and with reasonable safety. *Prewitt v. Waller*, 423 S.W.2d 641, 644 (Tex.App.—Dallas 1967, no writ). Furthermore, an employer must furnish an adequate force of competent workmen for carrying on work requested of employees with reasonable safety. *Holiday Lodge Nurs-*

*ing Home, Inc. v. Huffman*, 430 S.W.2d 826, 828 (Tex.Civ.App.—Texarkana 1968, no writ). If an employer breaches any of his duties, an employee's negligence action against the employer will be supported. *Prewitt*, 423 S.W.2d at 644.

In reviewing a no-evidence point, we will consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *See Responsive Terminal Sys. v. Boy Scouts*, 774 S.W.2d 666, 668 (Tex.1989). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). In reviewing a factually insufficient point, we must first consider, weigh, and examine all of the evidence that supports or is contrary to the jury's determination. *See Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We can only set aside the verdict if the evidence standing alone is too weak to support the finding, or the answer is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

Eastex and Karlo had the duty to furnish a reasonably safe work place and an adequate work force to perform safely the duties assigned to Dixie. On October 8, 1988, Karlo left Eastex before lunch even though he knew that a large order of meat was to be picked up that day and that, once he left, there would not be any males on duty who could lift the meat onto the truck. It was reasonably foreseeable that Dixie or her female co-worker could have been injured while moving the heavy order. *See Cabrera v. Brands*, 538 S.W.2d 795, 799 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.). Therefore, Karlo and Eastex could reasonably foresee and had reason to anticipate an injury suffered by Dixie in loading the meat. *See id.* The negligence of Karlo and Eastex rests primarily upon anticipation of the injury and failure to perform their duty arising because of the anticipation. *See id.* Thus,

there was legally and factually sufficient evidence to support the jury's finding of Karlo's and Eastex's negligence. We overrule points four through seven.

### DOUBLE RECOVERY

In their third point, the Werners and Eastex contend that the court gave Dixie a double recovery. However, they waived any complaint about an error in the judgment by not raising the complaint in the trial court. *See* TEX.R.APP.P. 52(a); TEX.R.CIV.P. 324(b). Because they did not preserve the complaint, nothing is presented for review. We overrule point three.

The judgment is affirmed.