**NATIONAL CONVENIENCE STORES INCORPORATED, Appellant,**

v.

**G.P. MATHERNE, as Administrator of the Estate of Ramon A. Tamez, and on behalf of Ida Tamez, Brittany Diane Tamez, and Graciela I. Martinez, Appellees.**

No. 14–96–00767–CV

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 28, 1999.

Rehearing Overruled March 4, 1999.

Damon Ball, Ruth G. Malinas, San Antonio, for appellant.

Arthur M. Glover, Jr., James B. Lewis, Peter M. Kelly, Houston, for appellees.

Before Justices YATES, ANDERSON, and EDELMAN.

## OPINION

RICHARD H. EDELMAN, Justice.

In this wrongful death and survival action, National Convenience Stores Incorporated ("NCS") appeals a judgment entered upon a jury verdict in favor of G.P. Matherne, as Administrator of the Estate of Ramon A. Tamez, and on behalf of Ida Tamez, Brittany Diane Tamez and Graciela I. Martinez on the

1. Worker's compensation coverage is generally elective. *See* TEX. LAB.CODE ANN. § 406.002(a) (Vernon 1996). The accident at issue in this case occurred before the effective date of the 1993 codification of the worker's compensation laws. Because there are no substantive changes in the provisions at issue here, this opinion refers to the current law.

grounds that there is no competent evidence: (1) that NCS breached any duty it owed to its employee; (2) that NCS's conduct proximately caused the accident; and (3) to support the damages for conscious pain and suffering or medical expenses. We reverse and render a take-nothing judgment.

## Background

Ramon Tamez ("Ramon"), the decedent, was a store manager for NCS, a non-subscriber under the Texas worker's compensation laws.[1] Ramon began working for NCS in May of 1990, when he was seventeen years old, and was promoted to assistant manager in March of 1991 and to store manager in November of 1991. One of Ramon's duties as a store manager was to make bank deposits and obtain change for the store. Store managers used their own cars when driving on such company business.

On January 16, 1993, the date of the accident, Ramon reported to work at 6:00 a.m. Some time before 9:00 a.m., he paged his supervisor, Allen Lussier, to ask if he could take the rest of the day off to attend a wedding in the Rio Grande Valley. Lussier said Ramon was free to go if he had completed his duties. Ramon left the store in his own car around 9:00 a.m. and picked up his wife, daughter, two sisters, a niece, and a family friend, all of whom were to accompany him on the trip to the Valley. To complete his job duties before leaving town, Ramon drove to the bank to deposit the store's receipts from the night before and to get change. The accident occurred on the way back to the store when Ramon either ran a stop sign or failed to keep a careful lookout and was struck by another car driven by Christy Young.[2] Ramon was severely injured and died at the hospital the following morning.

Suit was filed in probate court.[3] At trial, the jury found that negligence on the

2. The parties agreed that Ramon was acting in the course and scope of his employment at the time of the accident.

3. Because the other claims filed in connection with the accident have been nonsuited, settled or severed, the only claims at issue in this appeal are the wrongful death and survival claims

part of NCS proximately caused the accident, and it awarded a total of $290,000 in damages. After denying NCS's motion for JNOV, the trial court entered judgment on the verdict.

## Sufficiency of the Evidence

### Standard of Review

In reviewing the legal sufficiency of evidence, we consider only the evidence and inferences that tend to support the jury's findings and disregard all contrary evidence and inferences. *Wal–Mart Stores v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998). Anything more than a scintilla of evidence is legally sufficient to support a finding. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). More than a scintilla of evidence exists when the evidence supporting the finding rises to a level that would enable reasonable minds to differ in their conclusions. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

### Unsafe Driving Habits

■ The first of NCS's three points of error argues that the trial court erred in denying NCS's motion for directed verdict, submitting jury question one,[4] and denying its motion for JNOV because there is no competent evidence that it breached any duty it owed to Ramon. In support of this point, NCS argues, among other things, that it had no duty *to Ramon*[5] to: (a) train him to drive safely or to promulgate and/or enforce driving safety rules; (b) warn Ramon of the dangers of driving or failing to obey

traffic laws; and (c) protect Ramon from any bad driving habits he might have had.

■ Because this is a non-subscriber case, appellees had the burden of establishing that NCS's negligence proximately caused Ramon's injuries and death. *See Werner v. Colwell*, 909 S.W.2d 866, 868 (Tex. 1995); *see also* TEX. LAB.CODE ANN. § 406.033(d) (Vernon 1996).[6] The elements of a common law negligence action are: (1) a legal duty owed by one to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *See Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

■ The existence of a duty is a threshold question of law. *See id.* The nonexistence of a duty ends the inquiry into whether negligence liability may be imposed. *See id.*[7] With regard to Ramon's alleged unsafe driving habits, appellees argue that NCS breached its duties by allowing Ramon to drive without giving him driving safety instruction when NCS knew or should have known that Ramon was an unsafe driver.

It is undisputed in this case that Ramon received no driving training from NCS. James Pearson, a former NCS director of risk management, testified that it would be "a good idea" to have a defensive driving course available to teach employees how to drive safely. Similarly, Robert Lehnherr, appellees' safety expert, testified about written procedures concerning driver training and monitoring procedures that were followed in his experience with a trucking company that transported hazardous materials.

---

against NCS. The right to maintain such actions "is entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death." *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 347 (Tex.1992).

**4.** Question No. 1 asked: "Was the negligence, if any, of National Convenience Stores a proximate cause of the occurrence in question?"

**5.** We are not called upon to address any such duties to third parties but only to the deceased employee.

**6.** Because this was a worker's compensation action, NCS was precluded from claiming common

law defenses such as contributory negligence or assumption of the risk. *See* TEX. LAB.CODE ANN. § 406.033(a) (Vernon 1996).

**7.** Factors generally considered in determining whether a duty should be imposed include the risk, forseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *See Edward D. Jones v. Fletcher*, 975 S.W.2d 539, 544 (Tex.1998).

■ Although an expert may testify to ultimate issues which are mixed questions of law and fact, such as whether particular conduct constitutes negligence,[8] an expert is not competent to give an opinion or state a legal conclusion regarding a question of law because such a question is exclusively for the court to decide and is not an ultimate issue for the trier of fact. *See Dickerson v. DeBarbieris,* 964 S.W.2d 680, 690 (Tex.App.—Houston [14 th Dist.] 1998, no writ). As noted above, the existence of a duty is a question of law. *See Van Horn,* 970 S.W.2d at 544. Thus, expert testimony is insufficient to create a duty where none exists at law. *See J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 639 (Tex.App.—San Antonio 1993, no writ). Because Pearson's and Lehnherr's testimony is therefore insufficient to create a duty to provide driving rules, warnings, or training, we must determine whether such a duty exists at law.

■ Although an employer is not an insurer of its employees' safety at work, it has a duty to use ordinary care in providing a safe work place. *See Leitch v. Hornsby,* 935 S.W.2d 114, 117 (Tex.1996). This includes providing rules and regulations for the safety of employees,[9] warning employees of the hazards of their employment, and supervising their activities. *See Farley v. M M Cattle Co.,* 529 S.W.2d 751, 754 (Tex.1975).[10]

■ However, an employer has no duty to adopt safety rules where its business is neither complex nor hazardous or where the dangers incident to the work are obvious or are of common knowledge and fully understood by the employee. *See Sloan v. Leger Mill Co.,* 161 S.W.2d 333, 335–36 (Tex.Civ. App.—Amarillo 1942, writ ref'd w.o.m.). Similarly, the duty to warn or caution an employee of a danger arises when: (a) the employment is of a dangerous character requiring skill and caution for its safe and proper discharge, and (b) the employer is aware of the danger and has reason to know the employee is unaware of the danger. *See Lopez v. Ely,* 302 S.W.2d 957, 959 (Tex.Civ. App.—Austin 1957, no writ). Likewise, an employer's duty to instruct applies to an inexperienced employee but not to one who is experienced in the work he is assigned. *See W.E. Grace Mfg. Co. v. Arp,* 311 S.W.2d 278, 281 (Tex.Civ.App.—Dallas 1958, writ ref'd n.r.e.). Moreover, there is no duty to inform others of the requirements of the law because all persons are presumed to know the law. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 n. 3 (Tex.1990).

■ It follows from the foregoing that an employer has no duty to adopt rules or to warn or instruct an employee, who is an experienced driver, with regard to dangers that are ordinarily incident to driving a vehicle and require no special skills or knowledge other than that expected of all licensed drivers. In this case, Ramon's job duties required him to drive a short distance to the bank in his own car. As a licensed and experienced driver, he was legally responsible, independent of his employment, for knowing and obeying traffic laws such as those regarding speed limits and observance of stop signs. Accordingly, we conclude that NCS had no duty to Ramon to adopt rules, or to provide warnings or training to impart the knowledge and induce the compliance required of every licensed driver.[11]

*Fatigue*

■ An employer's duty to use ordinary care in providing a safe work place

---

8. *See* Tex.R. Civ. Evid. 704; *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 365 (Tex. 1987).

9. *See Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 923–24 (Tex.1981).

10. *See also* Restatement (Second) of Agency § 505 cmt. k (1958) (An employer may be liable to an employee for injury caused by the employee's own incompetence if it results from the employer's breach of its duty to instruct and warn the employee).

11. For the same reasons, we do not believe that NCS had a duty to Ramon to monitor his driving record in order to protect him from his own unsafe driving habits by relieving him of his driving duties. In the absence of such a duty, the evidence in this case concerning NCS's practices for monitoring its employees' driving records is not material to our disposition and is thus not addressed.

includes an obligation to provide adequate help under the circumstances for the performance of the work. *See Werner*, 909 S.W.2d at 869. In addition, when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 311 (Tex.1983).[12] In this case, appellees assert that NCS breached these duties by: (1) failing to ensure Ramon's store was sufficiently staffed so that he was not required to work such long hours and become fatigued; (2) failing to train Ramon regarding the effects of fatigue; and (3) allowing Ramon to drive in a fatigued state without such training.

As a store manager, Ramon was expected to work at least 54 hours per six-day week. In the six months before his death, he worked an average of 63.56 hours per week. William Holloway, an NCS district sales manager, testified that he knew of no policy preventing employees from driving if they had worked over any certain number of hours. Appellees contend that NCS knew that Ramon had to work extra hours, including an instance of back-to-back eighteen-hour days during the week preceding the accident, both because the store had been shorthanded for several months and through the company's time records. Appellees further assert that NCS knew these hours caused Ramon fatigue.

To support this position, appellees offered the testimony of Dr. William Dement, a sleep expert, who testified that a company, in the exercise of ordinary care, should have a policy to deal with fatigue and the number of hours an employee should work, and that NCS had no such policy. However, he did not testify as to what an appropriate limit on work hours should be.

Other Texas courts addressing the *Otis* duty with regard to a fatigued employee have held that an employer has no duty to prevent a fatigued employee from driving unless the employer both knew of the fatigue and took affirmative action to place the employee on the road in a fatigued state.[13] This court has similarly recognized that *Otis* requires both knowledge of an employee's fatigue and exercise of control over the employee in that condition before any duty on the part of the employer can arise.[14]

In this case, Allen Lussier, Ramon's supervisor, conceded that if an employee works 65–74 hours a week, "when he generally gets his day off he is going to be fatigued." He also conceded that, "[g]enerally speaking, this would not be something that I would find desirable, to look down and see a manager had worked 70 hours." He further acknowledged that he had worked such hours many times and was fatigued afterwards. He agreed that this fatigue "can affect the way that [his] employees drive automobiles." He acknowledged that fatigue "could endanger the driver's life or other citizens using the streets of Texas." He agreed that, "[i]f they

---

12. Because we conclude below that NCS had no actual or constructive knowledge of any incapacity by Ramon, we need not address whether: (a) the *Otis* duty extends to employees as well as to third parties; or (b) the evidence necessary to establish that an accident has been caused by fatigue as contrasted from other possible factors.

13. *See J & C Drilling Co.*, 866 S.W.2d at 639 (finding no evidence that employer performed any affirmative act of control to place employee on the road in a fatigued state); *Moore v. Times Herald Printing Co.*, 762 S.W.2d 933, 934–35 (Tex.App.—Dallas 1988, no writ) (finding no evidence that employer knew employee who worked twenty hours straight was driving in exhausted state and no evidence of affirmative act of employer to control employee's actions). However, in both cases, the evidence also failed to establish

that the employee was acting within the course and scope of his employment, whereas in this case, it is undisputed that Ramon was performing one of his job duties at the time of the accident.

14. *See Jenkins v. Kemlon Prods. & Dev. Co.*, 923 S.W.2d 224, 226 (Tex.App.—Houston [14th Dist.] 1996, no writ) (holding that *Otis* requires an employer to have knowledge of the employee's incapacity and then to exercise control over the incapacitated person); *see also Estate of Catlin v. General Motors Corp.*, 936 S.W.2d 447, 451 (Tex.App.—Houston [14th Dist.] 1996, pet. filed) (recognizing that the *Otis* duty has not been extended to situations where the employer either had no knowledge of the employee's condition or did not exercise control over the employee).

are fatigued and they are a bad driver, [he does not] want them behind the wheel because they could hurt themselves or others." He also acknowledged that generally, in the use of ordinary care, he would not want an employee who had a bad driving record and was fatigued driving for the company. Lussier also admitted that Ramon was shorthanded at the store at the time of the accident.

Grace Stillwell, an NCS district manager, testified that, based on NCS's records, Ramon had worked 70 hours during the six days leading up to and including the day of the accident. She acknowledged that this "could cause fatigue in a manager, but I can't tell you that it did."

Dr. Dement concluded that Ramon was suffering from sleep deprivation after interviewing his widow about Ramon's sleep habits, snoring, and difficulty in waking in the morning. Dr. Dement testified that a twenty-year old, as Ramon was at the time of the accident, generally needs an average of eight and a half hours of sleep. However, Dement conceded that he had no way to know how Ramon was specifically affected by the long hours he worked. Dement also acknowledged that a fatigued employee may not even know he is suffering from fatigue.

 As reflected by the evidence in this case (as well as common sense), fatigue is affected by the amount a person sleeps as well as the amount he works and engages in other activity. Therefore, unless the number of hours an employee has worked is itself great enough to have prevented a sufficient amount of sleep by the employee to avoid undue fatigue,[15] an employer's records of hours worked, even if reported contemporaneously, would not alone put it on notice that an employee may be unduly fatigued. In that event, an employer would have to have *actual* notice that an employee is unduly fatigued before an *Otis* duty to the employee could arise, if at all.[16]

15. In no event do we believe that an employer can be held to a duty to prevent or overcome the effects of fatigue that results from: (i) even a reasonably demanding work schedule, or (ii) factors arising outside the workplace.

16. *See supra* note 12.

In this case, the evidence is undisputed that Ramon had worked: (i) from 6 a.m. until approximately 9 a.m. on the morning of the accident; (ii) from 6 a.m. until 4 p.m. on the day before the accident; (iii) a total of 70 hours during the six days leading up to and including the day of the accident; and (iv) an average of 63.56 hours per week in the months before the accident. However, because this work schedule did not itself preclude Ramon from sleeping an average of eight and a half hours per day, the amount he needed according to Dement, it could not give NCS constructive notice that Ramon would have been too fatigued to drive on the day of the accident.

As to actual notice, two NCS employees, Kristy Burchfield and Guadalupe de los Santos, saw Ramon at work on the morning of the accident. In addition, Allen Lussier, Ramon's supervisor, spoke to Ramon on the phone some time before 9:00 a.m. However, none of these individuals or any other co-worker, passenger in Ramon's car, or other witness testified about Ramon's physical condition that morning. Thus, there is no evidence in this record that Ramon actually appeared tired or exhibited fatigue on the morning of the accident or that his superiors at NCS could have actually been aware of any undue fatigue at that time.[17] Under these circumstances, there is no evidence of actual or constructive knowledge by NCS that Ramon was incapacitated by fatigue. Without such knowledge, NCS could not have breached any duty to prevent Ramon from driving or to take other action to offset the effects of his alleged fatigue, even if such a duty could exist. Because we therefore conclude that NCS either did not owe or did not breach the legal duties claimed by appellees, we sustain point of error one and need not reach the remaining points of error. The judgment of the trial court is reversed, and

17. However, this is not to suggest that an employer could be held responsible for failing to monitor its employees' work records each day to determine which employees might be fatigued that day.

judgment is rendered that appellees take nothing in this action.