# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0410
═══════════

IN RE HEALTH CARE UNLIMITED, INC.

══════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
══════════════════════════════════════════

**PER CURIAM**

The trial court in this case granted a motion for new trial based on a juror's communications with a party's representative even though there was no evidence that the communications probably caused injury. In the absence of such evidence, we conclude that the trial court abused its discretion and improperly granted a new trial, and we conditionally grant relief.

The estate and survivors of Belinda Valdemar (collectively Valdemar's Survivors) sued Relator Health Care Unlimited, Inc. (HCU) and its employee, Edna Gonzalez, after Valdemar died as a result of an automobile accident. Valdemar was a passenger in a vehicle that Gonzalez was driving at the time of the accident, and Valdemar's Survivors alleged that HCU was vicariously liable because Gonzalez was driving within the course and scope of her HCU employment. Although the jury agreed that Gonzalez negligently caused the accident, it found that she was not acting within the scope of her employment, and thus HCU was not vicariously liable. Valdemar's Survivors moved for a mistrial, alleging that the presiding juror, Dominique Alegria, had engaged

in juror misconduct by communicating with an HCU employee, Sonny Villarreal, during breaks while the jury was deliberating.

The trial court initially granted the motion without conducting an evidentiary hearing. After HCU filed a motion for reconsideration, arguing that the Texas Rules of Civil Procedure require that "the court shall hear evidence [of alleged juror misconduct] from the jury or others in open court," *see* TEX. R. CIV. P. 327(a), the trial court conducted a hearing at which Juror Alegria, Villarreal, and Gi Anna Valdemar (one of Valdemar's Survivors) testified. Gi Anna testified that, while the jury was taking a break from its deliberations, she saw Juror Alegria place a call on her cell phone and overheard Juror Alegria address the person on the call as "Sonny," whom she believed to be Villarreal. Juror Alegria and Villarreal both admitted in their testimony that they had telephone conversations during the time the jury was deliberating, but explained that they knew each other from church and their discussions only involved preparations for the food to be served at an upcoming church retreat. Voicemail recordings played during the hearing supported this testimony, and Juror Alegria and Villarreal both denied that they talked about the pending case at all during the trial. Juror Alegria testified, in fact, that she did not know Villarreal was employed by HCU at that time, and she denied that she ever saw or noticed Villarreal at the trial. Juror Alegria and Villarreal both also admitted that Villarreal was a member of the school board of the district in which Juror Alegria and her husband were employed.

The trial court treated the motion for mistrial as a motion for new trial and issued an amended order, again granting the motion. In a two-page amended order, the trial court found that Villarreal was "a local manager" for HCU, that he sat behind and conferred with HCU's counsel

2

during the evidentiary part of the trial "in the full view of the jury," that during jury deliberations Juror Alegria had at least two cell phone conversations with Villarreal "concerning preparations for an upcoming church retreat," that Villarreal was a board member of the school district at which Juror Alegria's husband was employed, and that Juror Alegria had violated the court's instructions by communicating with an HCU representative during the trial of the case. The court concluded in its order that, "[i]n light of the totality of the circumstances, the integrity of the verdict rendered in this cause has been compromised and in the interest of justice, a new trial should be granted." The trial court did not find or conclude, however, that Juror Alegria's communications with Villarreal were material or probably resulted in injury. HCU petitioned the San Antonio Court of Appeals for mandamus relief, and that court denied the petition without explanation.

In *In re Toyota Motor Sales, U.S.A. Inc.*, we held that an appellate court may conduct a merits-based review of a trial court's order granting a new trial. 407 S.W.3d 746, 757 (Tex. 2013). Because we held in previous cases that a trial court must give a reasonably specific explanation of its reasons for granting a new trial,[1] we concluded that an appellate court's ability to evaluate the specificity of a stated reason is toothless if it cannot also evaluate the correctness of the stated reason. *See id.* at 757–58. Thus, an appellate court may review whether a trial court's explanation supports its decision to grant a new trial. *Id.* at 758. In the instant case, the trial court's amended order made specific findings of fact and conclusions of law based on the circumstances of the case.

---

[1] *See In re Columbia Med. Ctr. Of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 206 (Tex. 2009) (holding that when a trial court grants a new trial it must provide an understandable, reasonably specific explanation for doing so); *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (holding that the trial court's stated explanation must be legally appropriate and specific enough to assure parties that the articulated reasons are based, not on a pro forma template, but on the facts and circumstances of the case).

3

However, under Toyota, "[s]imply articulating understandable, reasonably specific, and legally appropriate reasons is not enough; the reasons must be valid and correct." *Id.* at 759.

To warrant a new trial based on jury misconduct, the movant must establish that (1) the misconduct occurred, (2) it was material, and (3) it probably caused injury. TEX. R. CIV. P. 327(a); *see also Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000). The complaining party has the burden to prove all three elements before a new trial can be granted. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex. 1985). Whether misconduct occurred and caused injury are questions of fact for the trial court. *Golden Eagle*, 24 S.W.3d at 372.

Rule 327's first requirement is not at issue in this case. It is undisputed that Alegria communicated with Villarreal during jury deliberations while the jury was on break, and thus that the instance of misconduct did occur. By engaging in these communications, Alegria violated the trial court's instructions, regardless of whether she knew that Villarreal was an HCU employee or representative, and Gi Anna Valdemar's and the trial court's concerns about these communications were justified. But HCU contends that there is no evidence to satisfy Rule 327's requirement that the misconduct cause probable injury. We agree. HCU also contends that the evidence is insufficient to establish materiality, Rule 327's second requirement. Because we find no evidence of probable injury, we need not address whether the misconduct was material.

"To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he would otherwise have done on one or more issues vital to the judgment." *Redinger*, 689 S.W.2d at 419 (internal quotation marks

4

omitted). We find no evidence in the record that Alegria's conversations with Villareal about the church retreat affected her vote or any other juror's vote.

Valdemar's Survivors cite to this Court's holding in *Texas Employers' Insurance Ass'n v. McCaslin* to support their contention that the communications were themselves sufficient to show materiality and probable injury. 317 S.W.2d 916 (Tex. 1958). But the facts of this case are distinguishable from the facts of *McCaslin*. In *McCaslin*, we held that injury occurred as a matter of law when undisputed facts showed that the plaintiff went to the office of one of the jurors, engaged the juror in conversation, and asked the juror to "'[b]e sure and do all you can to help me,' or something of a similar nature." *Id.* at 918. As we explained, "[t]he testimony in the record clearly indicate[d] to us that the purpose of this visit was to influence [the juror's] actions as a juror." *Id.* The ultimate issue was whether the trial was substantially unfair, and we held that misconduct not resulting in injury does not "condemn a trial as unfair." *Id.* at 921 (quoting *Cloudt v. Hutcherson*, 175 S.W.2d 643, 649 (Tex. Civ. App.—1943, writ ref'd w.o.m.)). We found that the communication in *McCaslin* was an overt act that created a strong inference of prejudice sufficient to show probable injury. *Id.*

In contrast to *McCaslin*, there is no evidence here that Juror Alegria's communications with Villareal probably changed or influenced Juror Alegria's vote or the outcome of the trial. In *McCaslin*, the plaintiff discussed the trial with the juror in a direct attempt to persuade the juror to help her in the case. Their communications were specifically and directly related to the trial, and intended to affect the juror's vote. In this case, the evidence established and the trial court found that Villareal and Alegria communicated solely about the upcoming church retreat, and these were

5

communications that began before the trial.  As we held in *McCaslin*, misconduct itself does not condemn a trial as unfair.  Here, there is no evidence that the communications, although prohibited by the trial court, were related to the trial or probably affected its outcome.

The record reveals that the trial court essentially used an "appearance of impropriety" standard to grant the motion for new trial. During discussions with counsel in open court, the trial judge explained:

> [Y]ou know, that conversation should have never taken place, as innocent as it may very well have been. But it—the mere appearance of that looks bad. . . . And—and I don't think I need to hear the evidence, whether it's good or should or the legal part about it. That in and—in and of itself, that there was a contact with someone associated with a party in this case, with a member of that jury during the actual trial of the cause, is enough for me to grant a mistrial in this matter. And you can argue what you want to from there, but that's going to be my decision.

After hearing evidence, the court concluded in its order granting a new trial that "the integrity of the verdict rendered in this cause has been compromised and in the interest of justice, a new trial should be granted." While we appreciate the court's desire to protect the "integrity of the verdict,"  Rule 327 accomplishes this by giving due consideration to the right to a jury trial in an effort to best protect the trial process. *See In re Columbia*, 290 S.W.3d at 213 ("[S]uch a vague explanation in setting aside a jury verdict does not enhance respect for the judiciary or the rule of law, detracts from transparency we strive to achieve in our legal system, and does not sufficiently respect the reasonable expectations of parties and the public when a lawsuit is tried to a jury.").  Under Rule 327, protecting the trial process in the jury misconduct context requires a finding of misconduct, materiality, and probable injury, not merely that there was an appearance of impropriety from which harm could be presumed.  The facts here, without more, do not support a finding of probable injury,

6

and therefore do not satisfy Rule 327 requirements to warrant granting a new trial based on jury misconduct.

Accordingly, after reviewing the trial court's findings and reasons for granting a new trial in this case, we hold that the trial court abused its discretion. The evidence is not legally sufficient to support a finding that the communications between the juror and the person associated with a party probably caused injury. Thus, granting the motion for new trial was improper. We conditionally grant relief and order the trial court to withdraw its First Amended Order Granting New Trial and render judgment on the verdict.

OPINION DELIVERED: April 25, 2014