**Opinion filed December 11, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00278-CV
_____

**BILLY STEARNS, Appellant**

**V.**

**BILLY STEWART, Appellee**

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV2203056**

## M E M O R A N D U M  O P I N I O N

While running cattle into a small pen then through a squeeze chute for vaccination and application of chemicals, one of the cows pushed a gate back, causing Appellant, Billy Stearns, to fall and sustain a head injury. At trial, the jury disagreed that the alleged negligence of his employer, Appellee, Billy Stewart, was a proximate cause of Stearns's claimed injury. Stearns appeals the resulting take-

nothing judgment. In one issue, which we construe as three issues,[1] Stearns argues: (1) that the evidence is factually insufficient to support the jury's adverse finding on his negligence claim; and that he is entitled to a new trial due to (2) juror misconduct, and (3) improper jury argument. We affirm.

## I. *Factual and Procedural History*

Stearns sued Stewart for negligence, alleging that Stearns sustained a traumatic brain injury while working as a ranch hand at Stewart's ranch in Brown County.[2] Stearns alleged that "[w]hile performing his duties at the instruction of [Stewart], [Stearns] was kicked in the head by a cow." After the trial court denied Stewart's no-evidence motions for summary judgment, the case proceeded to trial, during which the following evidence was adduced.[3]

Stewart testified that he has worked as a cattle rancher for fifty years. He employed Stearns for over seven years at his ranch and hotels. Stewart and his ranch foreman, Curtis Burnet, supervised Stearns. On April 19, 2020, Stearns was working in the cattle pens with Stewart as they attempted to vaccinate and apply fly and tick chemicals to the cattle. Stewart stated that they had planned to put twenty cows into the pen and then run them through a "small alley about 20 foot long," before running the cattle, one by one, through a "squeeze chute," where Stewart would apply the

---

[1]Stearns's stated issue on appeal reads: "This motion presents grounds that either (1) provides justification for a judgment in the Plaintiffs' [sic] favor; or (2) entitles Plaintiff to a new trial." However, the argument portion of Stearns's brief identifies and discusses three separate appellate issues. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 733 (Tex. 2020) ("[I]t is essential for courts to look not simply at the wording of parties' issues, but also the arguments, evidence, and citations relied on by those parties to determine which issues the parties intended to and actually briefed.").

[2]Stearns's live pleading is his first amended original petition. Stearns abandoned a claim for gross negligence by pleading amendment. Stearns also asserted a premises liability claim, but that claim was not submitted to the jury. Further, Stearns initially named Bertha Stewart and Stewart Motels, LLC a/k/a Best Western Plus as defendants. The trial court granted Stearns's notice of nonsuit as to each.

[3]Stewart filed two no-evidence motions for partial summary judgment, followed by an amended no-evidence motion for summary judgment, which the trial court denied.

vaccines and chemicals. Stewart's two grandchildren were present, along with a ranch hand, Bobby Sanderson.[4] Sanderson and Stearns were in the larger pen with a "poking pole" to guide the cattle into the chute. While Stearns was in the larger pen attempting to guide three or four cows into the smaller pen, Stewart saw one of the cows pushing the gate back, while Stearns was attempting to close it. Stewart observed Stearns stumble and fall, hitting his head on the ground, although he did not observe any cows contact Stearns after he fell. Stewart helped Stearns to get up and they sat down on the bucket of a tractor. Stewart observed that Stearns was "not totally coherent." An ambulance arrived at the scene, and the responders evaluated Stearns. A helicopter later arrived and transported Stearns to a nearby hospital.

Stewart stated that Stearns returned to work three days after the accident, and that he continued to work for Stewart for the next three months. Stearns later quit after he and Stewart had an argument over the building of a fence. Stewart acknowledged that it would have been less likely for Stearns to have been knocked to the ground by the cow had more than one person been there to close the gate. Stewart also stated that a battery operated "hotshot" instrument was available to direct the cattle, but Stearns was not using it because "[t]he hotshot would have been the last thing you wanted" as the cows "don't like that." Stearns later acknowledged that a hotshot would have been of no use during the incident.

Vance-Cady Gordon, Stewart's granddaughter, was present during the incident. Gordon testified that she observed that after the accident Stearns "was breathing hard like he had just got[ten] the wind knocked out of him, but [that] he was up and spitting . . . up."

Stearns testified that he does not remember what happened when he was injured, except that he was working in the pen "[p]ushing cows up to the squeeze

---

[4]Bobby is referred to in the record as both Sanders and Sanderson. For consistency, we will refer to him as Sanderson.

chute." During his testimony, Stearns had some type of episode on the stand. After a recess, Stearns returned to the witness stand and stated that his "episode" was caused by a seizure. Stearns then relayed that after seizures he cannot remember a lot of things about the accident. He stated that he experiences seizures, headaches, and dizziness. Stearns described various activities that he can no longer enjoy, such as attending church, watching fireworks, working on vehicles, eating ice cream, and being in the heat. Stearns said that these activities can trigger seizures. Stearns testified that currently he worked for a highway construction contractor, where he held a stop sign to direct passing traffic.

Stearns's expert witness, Jeffrey Lewine, Ph.D., testified that "strong evidence" indicates that Stearns suffered a moderate traumatic brain injury as a result of the accident. Similarly, Robert Thoma, Ph.D., diagnosed Stearns with major neurocognitive disorder due to traumatic brain injury with behavioral disturbance. Dr. Thoma opined that Stearns is "barely able to work," but he acknowledged that Stearns was currently employed holding signs directing traffic on highway construction jobs.

Robert Paul Tremp Jr., a vocational rehabilitation counselor and life care planner, testified that he developed a life care plan for Stearns, which involved cognitive behavioral therapy; psychiatric, psychological psychotherapy, speech therapy, and cognitive therapy evaluations; cognitive therapy sessions; medication; a diagnostic EEG; and neurology visits. Nik Volkov, Ph.D., a professor of economics and finance, testified that he calculated the present value of the life care plan needed for Stearns to be $73,508.

In a chambers conference, the parties convened to interview a juror regarding possible juror misconduct. While on break during trial, the juror was heard talking to her husband on the phone with the speaker on. In chambers and on the record, the juror explained that she did not talk about the case. She informed her husband

4

that she did not know when she would be home, and her husband stated that he was going to a property to sight his rifle. Both parties stated that they had no issue with the juror continuing her jury service.

During closing argument, Stewart's counsel, while discussing physical impairment damages, very briefly referenced Stearns's alleged seizure on the stand while testifying. But Stearns did not object at trial to the argument.

Question No. 1 in the trial court's charge asked the jury: "Did the negligence of [Stewart], if any, proximately cause the occurrence in question?" To which, the jury answered, "No." Consequently, as the trial court's charge instructed, the jury did not answer the remaining damages question.[5] The trial court entered a final take-nothing judgment pursuant to the jury's verdict. Stearns filed a combined motion for new trial, reconsideration, and judgment notwithstanding the verdict, in which he argued that he was entitled to a new trial because: (1) "[t]he record reflects juror misconduct by impermissibly discussing the details of the case"; (2) Stewart's counsel's reference of Stearns's seizure on the stand in closing argument constituted improper, incurable jury argument; and (3) "[t]he great weight and preponderance of evidence proved negligence on the part [of Stewart] in stark contrast to the jury verdict of no negligence." Following a hearing, the trial court denied Stearns's motions. This appeal followed.

## II. *First Issue: Sufficiency of the Evidence*

In his first issue, Stearns argues that the jury's verdict was "contrary to the great weight and preponderance of the evidence."

### A. *Briefing Requirements*

As an initial matter, we note that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to

---

[5]The trial court's damages instruction began with: "Answer QUESTION 2 if you answered 'Yes' in response to QUESTION 1. Otherwise, do not answer QUESTION 2."

authorities and to the record." TEX. R. APP. P. 38.1(i). The brief must also "state concisely and without argument the facts pertinent to the issues or points presented" and support those facts with record references. *Id.* R. 38.1(g). The appellant bears the burden to identify how the trial court erred. *See Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex. 1987) (recognizing that "the burden is on a party appealing from a trial court judgment to show that the judgment is erroneous in order to obtain a reversal"); *see also Gunderson v. Nat'l Indoor RV Centers, LLC*, No. 02-24-00025-CV, 2024 WL 3365233, at *2 (Tex. App.—Fort Worth July 11, 2024, pet. denied) (mem. op.).

Appellate courts are to interpret briefing requirements liberally, but parties asserting error on appeal must put forth some specific argument and analysis citing the record and authorities in support of their argument. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018); *see Matter of T.L.H.*, No. 11-23-00071-CV, 2025 WL 51811, at *7, n.8 (Tex. App.—Eastland Jan. 9, 2025, no pet.) (mem. op.). This requirement is not satisfied by merely uttering brief conclusory statements unsupported by legal citations. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Error may be forfeited through inadequate briefing. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994). And the failure to either cite relevant legal authority or advance arguments for the contentions made in an appellant's substantive analysis waives the issue on appeal. *See Dipprey v. Double Diamond, Inc.*, 637 S.W.3d 784, 801 (Tex. App.—Eastland 2021, no pet.); *Flores v. Benavides*, No. 11-15-00060-CV, 2017 WL 962664, at *1 (Tex. App.—Eastland Mar. 9, 2017, no pet.) (mem. op.) ("Bare assertions of error, without citations to authority, waive error."). This rule is essential to our justice system because "we would be abandoning our role as judges and become an advocate for that party" if we were to undertake our own search for authorities or evidence that might favor a

party's position. *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.).

In support of this issue, Stearns does not recite the evidence presented at trial regarding the issue of negligence, either in his statement of facts or within the argument sections of his brief. *See* TEX. R. APP. P. 38.1(g), (i). In his "Background Facts & Applicable Evidence" section, Stearns provides sparse citations to the reporter's record regarding the evidence presented at trial and primarily cites to exhibits in the clerk's record that were attached to his posttrial motions. Such evidence was not presented to the jury, and therefore, we may not consider it in determining whether there is sufficient evidence supporting the jury's verdict. *See Brockie v. Webb*, 244 S.W.3d 905, 909 (Tex. App.—Dallas 2008, pet. denied) ("In reviewing [a factual sufficiency] point, we consider, weigh, and examine all the evidence presented at *trial*.") (emphasis added). Additionally, to the extent that Stearns provides argument regarding his sufficiency issue, he does so only in relation to a premises liability claim, a claim that was not presented to the jury.[6] As to negligence, the claim that the jury did consider, Stearns provides no argument or authority as to why the evidence presented at trial was factually insufficient to support the jury's verdict. Accordingly, Stearns has waived his first issue due to inadequate briefing. *See NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 446–47 (Tex. App.—Fort Worth 2023, pet. denied) ("Failure to provide citation to the record or citations for legal references constitutes inadequate briefing and waiver.").

B. *The Evidence Presented at Trial*

Nevertheless, our review of all the evidence presented at trial demonstrates sufficient evidence for the jury to have concluded that either Stewart was not

---

[6]And even as to this non-pertinent premises liability claim, Stearns discusses only the evidence found in the clerk's record and presents conclusory argument regarding the elements of such a claim.

7

negligent, that any negligence of Stewart was not a proximate cause of the accident, or that Stearns failed to carry his burden of proof on the issue of his employer's negligence by a preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). Question No. 1 of the trial court's charge read and was answered as follows:

> **QUESTION 1**
>
> Did the negligence of [Stewart], if any, proximately cause the occurrence in question?
>
> "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.
>
> "Proximate cause" means a cause that was a substantial factor in bringing about an occurrence, and without which cause such occurrence would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the occurrence, or some similar occurrence, might reasonably result therefrom. There may be more than one proximate cause of an occurrence, but if an act or omission of [Stearns] was the "sole proximate cause" of an occurrence, then no act or omission of [Stewart] could have been a proximate cause.
>
> "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.
>
> Answer "Yes" or "No":
>
> ANSWER: __No__

When a party challenges the factual sufficiency of a finding on which it has the burden of proof, it must show that the decision is so against the great weight and preponderance of the evidence as to be manifestly unjust, "shock the conscience, 'or clearly demonstrate[] bias.'" *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019) (quoting *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

8

We consider and weigh all the evidence in a neutral light, keeping in mind that the jury acts as the sole judge of the weight and credibility of the testimony. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (courts must consider and weigh all evidence); *see* TEX. R. CIV. P. 226a (III) (mandating instruction to jurors that they are the "sole judges of the credibility of the witnesses and the weight to give their testimony"); *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 28 (Tex. 1993) (quoting the instruction in Rule 226a (III) in the context of a factual sufficiency challenge); *Humphrey v. Am. Motorists Ins. Co.*, 102 S.W.3d 811, 814 (Tex. App.—Eastland 2003, pet. denied). In other words, the trial court should not substitute its judgment for that of the jury. *Windrum*, 581 S.W.3d at 781; *see In re Rudolph Auto., LLC*, 674 S.W.3d 289, 299 (Tex. 2023) ("No level of the judiciary has the authority to repudiate a determination, predicated on the presence of probative evidence, made by a properly constituted and instructed jury in response to a properly submitted question." ); *Jaffe*, 867 S.W.2d at 28 ("[A] court of appeals may not set aside such a finding merely because the judges believe that they would have reached a different and more reasonable result had they been jurors.").

A plaintiff asserting a cause of action for negligence must establish three elements: (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach of duty proximately caused the plaintiff's damages. *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022); *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). "Although an employer is not an insurer of [its] employees' safety at work, an employer does have a duty to use ordinary care in providing a safe work place." *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995). However, an employer "has no duty to provide equipment or assistance that is unnecessary to the job's safe performance." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 795 (Tex. 2006) (citing *Allsup's Convenience Stores, Inc. v.*

*Warren*, 934 S.W.2d 433, 438 (Tex. App.—Amarillo 1996, writ denied)). "It owes no duty to warn of hazards that are commonly known or already appreciated by the employee." *Id.* at 794–95 (citing *Nat'l Convenience Stores, Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). Moreover, "when an employee's injury results from performing the same character of work that employees in that position have always done, an employer is not liable if there is no evidence that the work is unusually precarious." *Id.* (citing *Werner*, 909 S.W.2d at 869).

In their respective opening statements, the parties addressed the issue of alleged employer negligence. Stewart squarely presented the employer negligence issue that would ultimately constitute the first question that the jury would be required to answer in the court's charge. Trial counsel for Stewart concluded his statement by stating: "but the question in this case really is what did [Stewart] do that was negligent, and how did it cause this to occur?"

Stearn's trial testimony was brief. He testified that he had worked as a ranch hand since college, that his work for Stewart had included working as a ranch hand working cows, that he had no memory of the work done the day before the accident, nor did he "remember anything about the day of the accident . . . [n]othing at all." To further questioning, he agreed that they were working in a pen on the day of the accident. Stearns then stated that he was "[p]ushing cows up to the squeeze chute"; he did have help doing that job; and a hotshot stick would not have helped him to do that job. When asked whether he recalled anything else about that day he stated, "In my opinion, if I had more help back there, I wouldn't got hurt." He offered no further explanation of that statement. And, other than that single statement, Stearns did not address the alleged negligence by Stewart. He did not directly blame Stewart, nor did he opine that, procedurally, anything had been done differently on this day than had occurred on any other occasion that he had worked cattle.

Stewart testified that Stearns was not working the cattle alone on the day of the accident. In fact, it had been at Stearn's request that Bobby Sanderson was hired to help and was present on the day of the accident. There was no evidence presented that indeed, had there been additional men present, that the same accident would not have occurred, and there was no expert testimony indicating that any act or omission of Stewart violated any ranching custom or practice.

In closing arguments, evidence of the alleged acts or omissions of Stewart were a focus of both parties' trial counsel, centered on whether additional ranch hands should have been in the pen with Stearns directing cattle through the chute, whether the accident was foreseeable, and whether it resulted from Stewart's lack of ordinary care.

The jury as the fact finder was left to weigh the facts and evidence on either side of the negligence allegation, and its members unanimously answered "No" to Question No. 1. It was within the jury's purview to believe that Stearns failed to prove that acts or omissions of Stewart were a proximate cause of the accident, to believe that Stearns himself was negligent, and/or to believe that the actions of the cow in question were not anticipated and that such did not constitute negligence by Stewart. In our review of all the evidence presented at trial, we cannot say that the jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, "shock the conscience, 'or clearly demonstrate[] bias.'" *See Windrum*, 581 S.W.3d at 781.

Accordingly, we overrule Stearns's first issue.

11

### III. *Motion for New Trial*

In his second and third issues, Stearns argues that the trial court erred in denying his motion for new trial based on juror misconduct and improper jury argument.

### A. *Standard of Review*

We review the denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam). "A trial court abuses its discretion if its decision to deny a motion for new trial is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if its decision misconstrues or misapplies the law." *J & J Container Mfg., Inc. v. Cintas-R U.S., L.P.*, 516 S.W.3d 635, 637–38 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Celestine v. Dep't of Fam. & Prot. Servs.*, 321 S.W.3d 222, 235 (Tex. App.—Houston [1st Dist.] 2010, no pet.)).

### B. *Juror Misconduct*

In his second issue, Stearns argues that a juror's telephone conversation "was obviously material and probably did cause the rendition of an improper verdict."

"To warrant a new trial for jury misconduct, the movant must establish (1) that the misconduct occurred, (2) it was material, and (3) probably caused injury." *In re Whataburger Rests. LP*, 429 S.W.3d 597, 598 (Tex. 2014) (orig. proceeding) (per curiam) (quoting *Golden Eagle*, 24 S.W.3d at 372); *see* Tex. R. Civ. P. 327(a). "Whether misconduct occurred and caused injury are questions of fact for the trial court." *In re Health Care Unlimited, Inc.*, 429 S.W.3d 600, 602 (Tex. 2014) (orig. proceeding) (per curiam) (citing *Golden Eagle*, 24 S.W.3d at 372). "To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he would otherwise have done on one or more issues vital to the judgment." *Id.* at 603 (quoting *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex. 1985)); *accord Pharo v.*

12

*Chambers Cnty., Tex.*, 922 S.W.2d 945, 950 (Tex. 1996). "[T]estimony about what a person 'would have' done or what 'would have' happened under different circumstances is speculative and conclusory in the absence of some evidentiary support." *Whataburger*, 429 S.W.3d at 599; *see Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 161 (Tex. 2012). "The complaining party has the burden to prove all three elements before a new trial can be granted." *Health Care Unlimited*, 429 S.W.3d at 602 (citing *Redinger*, 689 S.W.2d at 419).

As noted above, the juror in question was questioned in chambers regarding her telephone conversation. She denied making any comments that would indicate juror misconduct, and Stearns did not object to her continuing to serve on the jury. In his motion for new trial, Stearns alleged that the juror was overheard discussing the case with her husband. However, Stearns presented no further evidence on the issue, without which he failed to meet his evidentiary burden to show that any alleged juror misconduct was material, or that it probably caused injury. *See Health Care Unlimited*, 429 S.W.3d at 602. Therefore, we hold that the trial court did not abuse its discretion in denying Stearns's motion for new trial on this basis. *See R.R.*, 209 S.W.3d at 114. We overrule Stearns's second issue.

C. *Improper Jury Argument*

In his third issue, Stearns argues that Stewart's counsel's jury argument regarding Stearns's seizure while testifying "constituted an incurable juror argument." The record of closing arguments demonstrates that trial counsel for Stearns was the first to address the issue of Stearns's seizures, which he tied to their alleged effect on future employment.

To obtain reversal of a judgment based on improper jury argument, a complaining party must prove (1) an error; (2) that was not invited or provoked; (3) that was preserved at trial by a proper objection, motion to instruct, or motion for mistrial; (4) that was not curable by an instruction, withdrawal of the statement, or a

13

reprimand by the trial court; and (5) that the argument by its nature, extent, and degree constituted reversibly harmful error. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex. 1979) (citing 3 MCDONALD & CARLSON TEX. CIV. PRAC. § 13:17.2 (1970 ed.)); *Amigos Meat Distribs., L.P. v. Guzman*, 526 S.W.3d 511, 525 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Richmond Condos. v. Skipworth Com. Plumbing, Inc.*, 245 S.W.3d 646, 667 (Tex. App.—Fort Worth 2008, pet. denied).

While a complaint regarding improper jury argument must be preserved by a timely objection and a request for an instruction that the jury disregard the improper remark, if an improper argument is "*incurable*," a party may raise the issue for the first time in a motion for new trial. *See Nguyen v. Myers*, 442 S.W.3d 434, 442 (Tex. App.—Dallas 2013, no pet.) (first citing TEX. R. APP. P. 33.1(a)(1); and then citing TEX. R. CIV. P. 324(b)(5)). "Typically, retraction of the argument or instruction from the court can cure any probable harm, but in rare instances the probable harm or prejudice cannot be cured." *Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008). An improper argument is incurable if, "by its nature, degree, and extent[,] constitute[s] such error that an instruction from the court or retraction of the argument could not remove its effects." *Id.* at 680–81. Incurable argument is rare and usually encompasses appeals to racial prejudice; unsupported charges of perjury; unsupported, extreme, and personal attacks on opposing parties and witnesses; or baseless accusations of witness tampering. *Id.* at 681. The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Phillips v. Bramlett*, 288

14

S.W.3d 876, 883 (Tex. 2009) (quoting *Goforth v. Alvey*, 271 S.W.2d 404, 450–51 (1954)).

Stearns complains of the following portion of the unobjected-to closing argument by Stewart's counsel:

> I don't know -- you had your opportunity to watch . . . [Stearns] throughout the trial. Did he look physically impaired when he was going out to smoke on the balcony? Did he look physically impaired when he was going through the juror cards during the jury selection? Have you seen any physical, *other than the episode yesterday, which you can make what you want*, what physical impairment did you see? None.

(Emphasis added). It was not improper to acknowledge that Stearns had an episode on the stand that he later referenced as a seizure. And some response to the closing argument of Stearns's trial attorney regarding his ability to function, including in his future employment, was invited. *Richmond Condos*, 245 S.W.3d at 668 (citing *Standard Fire Ins. Co.*, 584 S.W.2d at 839) (reversal is not required unless improper argument was "uninvited and unprovoked"). Stearns cites no authority, nor can we find any, for the proposition that this argument is improper, much less incurable. First, we note that counsel's argument does not fall into any of the categories that courts have recognized as incurable; therefore, Stearns failed to preserve any alleged error by failing to timely object. *See Peñalver*, 256 S.W.3d at 680; *Wilhoite v. Sims*, 401 S.W.3d 752, 763 (Tex. App.—Dallas 2013, no pet.) (concluding that argument was not incurable where it did not fit into any of the previously recognized categories). Second, assuming that Stearns properly preserved the issue, the reference to Stearns's purported seizure while testifying was not improper. It is the province of the jury to draw conclusions based on a witness's demeanor, and we interpret counsel's comments as an invitation to do just that. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004). For the forgoing reasons, we conclude that the trial court did not abuse its discretion in denying Stearns's motion for new

15

trial based on improper jury argument.  *See R.R.*, 209 S.W.3d at 114.  We overrule Stearns's third issue.

## IV.  *This Court's Ruling*

We affirm the trial court's judgment.


W. BRUCE WILLIAMS

JUSTICE


December 11, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.